My name is Ron Offred. I represent Mrs. Morrissette. This is a case where Judge Beislein of the Anchorage decided, he decided on summary judgment. In the beginning, he went, got right to the issue. He said, it seems to me this case may boil down to simply as this. The plaintiff entered into an agreement with the defendant. She paid valuable consideration. The defendant didn't, did not deliver to her satisfaction the consideration. She should therefore get the money back. The jury has to decide. Maybe that's what the trial's all about. Mr. Avala, counsel for the defendant, said, I think that's the only, whatever the case is, that's it. Judge Beislein said, but that's the big case. That's the big dispute. In the motion for summary judgment, the defendant had set forth as one of the issues, number three, that plaintiff's claim based on breach of contract with respect to the Mountain View Shell Food Mart A&W restaurant, herein called the Mountain View Station, is of no value because it was established in her divorce action that the decline in value of the Mountain View Station was attributable to the mismanagement by the plaintiff's husband. What this case was about was the purchase by Morrissette and her husband of a franchise, a shell franchise with an A&W restaurant attached, for which she paid over $250,000. At some point, because of the problems in the marriage, the husband had taken over management and wasn't doing a very good job. She had been given credit in the divorce court for $250,000 against other assets to show the value of that particular station. At some point, the divorce court allowed her to go back in and take possession of that station because it was losing value. At that point, she called the seller, Mr. Suzuki, and said, look, we're having some trouble here. He agreed to come and to help. The issue, he then took over the station, and through a whole series of situations, he ultimately took the station and the franchise and turned it back to Shell without accounting to Mrs. Morrissette for any of the value. Now, that was the issue, as Judge Beisle had pointed out. So what's your claim? Is it a breach of contract? What is the theory upon which you're seeking relief? Well, we believe that under the original agreement, she purchased this franchise, had this item, had this asset of value, and that he took that asset from her and he turned it in to satisfy his own obligation. Go ahead. He didn't take it from her. She gave it to him. She gave it to Suzuki. Now, you have three claims, as I understand it, breach of contract, fraud, and restitution, right? Correct. Now, breach of contract, you don't have anything in writing. The judge was right in granting summary judgment. Do you agree with that? Well, to a certain extent. There was no writing. Put that to one side. There was no writing when he came in and took over management of it. Right. Fraud. What's the tribal issue of fact as to fraud? Well, the fraud, there were several aspects pledged by the attorney, the attorney at that level. And I apologize. I was not that attorney. All right. Let's get to restitution, then. Isn't your claim really that Morissette gave this station to Suzuki with the understanding she was going to get it back? Suzuki didn't give it back to her. He gave it back to Shell to get rid of some claims that Shell had against Suzuki. Correct. So he benefited from that transaction. He did. But Morissette didn't, and he owes Morissette some money in good conscience and equity. Correct. He should have to pay her the residual value, and I think that's what Judge Weisslein saw. There's some residual value. But why does a judge who said that rule against her? Well, I think what happened, and as I read the record and so forth, I think what happened is Judge Weisslein became the jury. He became the fact finder. He just kind of moved himself over into that area. And instead of isolating questions of fact, he became the fact finder. What were the facts in front of the court at the time of summary judgment that would have permitted a finding that there was value that should have been restored under a restitution theory? I think there are four or five. She paid over $250,000 for this particular asset. Of that amount, it was broken down, $50,000 for inventory, about $17,000 for fuel and cigarettes and other items, and then a few other odds and ends. And she wanted to recoup as much of that as possible. When he came in, there were discussions about buying back the store or buying back the franchise. $150,000 was her offer, $125,000 was his offer. I mean, he recognized that there was value in there. There was a breakdown in the negotiations. She wanted to retake possession of that and try to recoup as much of that as she could, and in the letters and so forth in the record. Answer Judge Graber's question. What evidence was there at the time of summary judgment that value, which had been transferred from Morissette to Suzuki, remained so that it could be transferred back to Morissette and form the basis of a restitution claim? Well, I think that those facts... You said $50,000 of inventory, $17,000 of gasoline. When she gave it to Suzuki, where is the evidence that there was anything to restore to Morissette at the time when Morissette demanded possession back? But I submit that that's one of the issues of fact is how much was there because those were items which were not given to us. We were not allowed and didn't have those items, so that became, in our opinion, a jury question. So you're saying there's a triable issue of fact as to how much of the inventory, gasoline, and other valuable things on hand were available to give back to Morissette? At a minimum, yes. And he had offered her, I take it, your other answer was that he had offered to pay... $125,000. $125,000. Right. So that is a kind of admission of the value of it? Correct. And we had, there was evidence of prior dealings where another station had been sold and then taken back and an amount had been paid by Suzuki for that. The judge, and what I had earlier indicated that I felt that, I suggested that the judge had turned into a fact finder. And if you look at the record in his order, amended order on severed judgment, he said that she had appeared to have abandoned the business, and that was to justify his conclusion that there wasn't any value there. And yet the record indicates that she was fighting to get the severed value back. Now, maybe this was not a big trial, but it was a triable issue as to what value that business had. And these, this is something that instead of the judge becoming the fact finder, we believe that Mrs. Morissette had a right to at least have that issue presented to a jury so they could determine what the residual value of that was. Mr. Offert, did you want to save some remittance time? Yes, I was going to reserve the remaining two minutes. Thank you very much. Certainly, ma'am. Thank you. Mr. Haviland. May it please the Court. I have three points I want to make. One would be of fact, another of law, and another of elementary justice. With respect to the fact problem, and I think it is a problem, is the court, of course, has the authority to make findings of fact based upon the record. On summary judgment? On summary judgment on the record. He can say, this is my conclusion because there are no facts to refute it. So when the judge's opinion amounts to a set of findings of facts, I expect at any time that I've done a briefing on appeal before when somebody doesn't believe that those fact findings are correct, that the judge's opinion is mistaken, that they identify the facts involved and say that the Court erred in finding those findings. No. He disputed that there was no – the district court found that there was no value of the facts. More specifically. Which the plaintiff disputed on summary judgment. Disputed on summary judgment, yes. But when it came to appeal, I haven't noticed what facts that are mentioned in his briefs. Well, there's enough in the brief. Errors. There's enough in the brief to point out that there was a dispute over the value of that station. There wasn't. And the franchise. But, I mean, but on summary judgment, that the nonmoving party has an obligation to present those facts which – that he has, or she has in this case, that refute the finding of the Court. Is it your point – you have to educate me. In this district court, do you have the local rules regarding undisputed statements of fact? I can't tell you, Your Honor. All right. Fine. Next question. What you're saying is that the nonmoving party failed to raise an issue of fact by not presenting admissible evidence that there was indeed any value in the Shell station when she asked for it back from Suzuki once they agreed not to agree. Exactly, Your Honor. And what you're saying is that the evidence which has been cited by your learned opponent that there was $50,000 in inventory, $17,000 in fuel when the station was first handed over is not sufficient because there's no evidence that any of that was remaining there when it was handed back, and the offer of $125,000, although not sufficient because it wasn't in writing, is not an admission of a party litigant establishing the fact of value. Is that your position? Exactly, Your Honor. And in addition, the Court found that she had abandoned it, and the abandonment was based upon her failure to go to Shell, which she could have done at any time, and establish her right to the property. But does abandonment ipso facto establish that it has no value? Can't one abandon a valuable object? Well, I mean, sure she can abandon a valuable object, but I don't know why she would expect Mr. Suzuki to pay for that. I mean, he did not, as if he profited from it. Abandonment would be an affirmative defense in a restitution action. I want to question you. When you said he didn't profit from it, didn't he receive value when he turned it over to Shell? No. There was no specific value. I suppose you could say that he got the value if he was excused the existing debt. How much of his existing debt was excused? Well, the back rents that she had. How much was that? How many dollars? I'm not sure. It was a sum of money, though, wasn't it? There was an indebtedness there. There was an indebtedness, correct. There was an indebtedness that she was obliged to pay him. It wasn't as if it was his sole obligation. I'm not really sure I understand why his offer to pay her $125,000 for the asset isn't an admission that it's worth that much to him. Well, I mean, this is a negotiation early on about purchasing a station. And, you know, that wasn't accepted. You know, circumstances changed. He was trying to salvage a station that had been ruined by her husband. Well, that's not exactly my question. If I offer to pay you $1,000 for an object, then later I claim that's a completely worthless object. Why can't you come back and say, yes, then why did you offer me $1,000 for it? Why isn't that some evidence of the offeror's valuation of the asset? Well, it wasn't an object. It was a moving target. And, you know, what might be worth $125,000 one day wasn't necessarily worth it a month later. Yes. And that is certainly open to argue, put in more evidence and argue before a jury. But at summary judgment, why isn't that enough to withstand summary judgment? Well, I just don't think that it was adequately presented to either the court below or to this Court on briefs that that money was owing. And I think she did have, and when she declined to apply to Shell and she was given notice that the station was being given back, then she failed to act on that or to pay the rent herself. It seemed to me that she was giving up on it. I'd like to add my note on justice, which is that she received this is not a victim that is an appeal here. She received $250,000 credit in the divorce for her against her husband. And this cause of action apparently had in that divorce action no real value. Is that a collateral benefit? Sorry? Is that a collateral benefit as far as you're concerned? As far as I'm concerned? I mean, you had nothing to do with giving her $250,000 credit in the divorce proceeding. No. No. That's right. It's just that she's hardly a victim if she got that credit. And the fact that she's a victim, maybe she was victimized by her husband, $250,000 worth, and now she's being victimized by Suzuki and other dollars. Well, she'd be picking up another quarter of a million dollars that after she already got the benefit of the $250,000 that was first invested. So I don't think that would be a just result. Any more questions, Your Honor? I have none. All right. I don't believe any of us do. Thank you very much. Mr. Offert, you still have two minutes left in rebuttal if you'd like to use it. Thank you. If I might just address real quickly, a judge is not to make a finding even a fact in a motion for summary judgment. The judge may very well say that that's a triable issue. It's a weak case and you probably should go settle it, but he shouldn't make the finding. That's a jury decision. On the other issues, for example, abandonment, the judge made the finding of abandonment, yet if you read the record, she went to the station with her nephew and the police were called. She was kept away from her assets. She said that she wasn't abandoning it. And the letters which are in the record also show that she objected and didn't want the station turned over to Shell. And lastly, Mr. Suzuki did profit. When the station or the franchise was turned back to Shell, he profited it. The termination agreement is item number seven in the record, and it shows the recent liabilities and so forth. But what's not even addressed in the release of those liabilities is the station had gas, inventory, furniture, fixtures, and other things that he benefited from. Service stations only make a few cents per gallon, and if gas is selling at $2 or $3 a gallon, the inventory of even 10,000 or 20,000 gallons of fuel is a sizable amount. So those were issues of value that he received, even though he did abandon the station and his liability was shelved. Thank you very much. Thank you. We appreciate the arguments of both parties. The case of Morissette v. A&W Alaska is submitted. And our next case on the argument calendar.
judges: Graber, Paez, Bea